**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Northwest Airlines, Inc., Civil No. 00-1933 (DWF/FLN)

Plaintiff and Counter-Defendant,

v. **MEMORANDUM OPINION AND ORDER**

Aeroservice, Inc.,

Defendant and Counter-Plaintiff.

---

Jeffrey A. Eyres, Esq., Leonard, Street and Deinard, 150 Fifth Street South, Suite 2300, Minneapolis, MN 55402, appeared on behalf of Plaintiff.

Timothy R. Schupp, Esq., Gartner, Bennett & Schupp, 2200 One Financial Plaza, 120 South Sixth Street, Minneapolis, MN 55402-1824 and Maurice Baumgarten, Esq., Baumgarten & Torricella, 100 Second Street Southeast, Suite 4300, Miami, FL 33131, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on April 26, 2001, pursuant to Plaintiff's motion for partial summary judgment. The dispute involves a contract for sale of certain airplane parts by Northwest Airlines, Inc. ("Northwest") to Aeroservice, Inc. ("Aeroservice"). For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## Background

In December of 1999, Northwest and Aeroservice entered into a contract for the sale of certain aircraft materials, specifically aircraft landing gear and structural components. The total purchase price on the contract was $4,224,650. Upon delivery of the landing gear components, Aeroservice was to make an initial cash payment of $1,700,000 to Northwest–$1,400,000 for the

FILED JUN 14 2001
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

landing gear components themselves and $300,000 as partial payment for the structural components. Aeroservice was also obligated to make 24 monthly cash payments totaling $1,262,825. Finally, the remaining balance on the contract was to be "paid" as a credit to Northwest of $1,262,825 for future goods and services from Aeroservice.

The contract further specified a reasonable time period for Aeroservice to inspect the goods. The contract provided: "All Components are subject to Aeroservice's final inspection and acceptance at destination. Such inspection shall be made within a reasonable time not to exceed ten (10) business days from delivery at an Aeroservice facility." The contract further disclaimed all express and implied warranties of the materials, but provided that Northwest would provide Aeroservice with FAA Form 8130-3 certification for all components.

Northwest delivered, and Aeroservice accepted, the landing gear components, and Aeroservice paid Northwest $1,700,000 pursuant to the terms of the contract.

Northwest also delivered the structural components[1] in two shipments, one delivered January 7, 2000, and one delivered January 12, 2000. In a letter or e-mail dated January 28, 2000, Allan Jiron of Aeroservice informed Northwest of "discrepancies" regarding the FAA 8130-3 Forms. Specifically, he noted that the forms were not signed in the appropriate block, several of the forms had typographical errors, and the forms were not accompanied by either manufacturer's original packing slips or traceability documents.

---

[1] Northwest agrees that it exercised its right pursuant to the contract to reduce the quantity of components delivered to Aeroservice. Northwest contends that it retained components valued at $394,000, and that amount should be deducted from the amount of Northwest's credit with Aeroservice, again pursuant to the terms of the contract. The parties do not agree, however, on the quantity of components retained by Northwest.

After several months and several other communications, Jiron sent another missive to Northwest on April 14, 2000, indicating that foreign clients were unwilling to purchase the components without the original packing slips or traceability documents, that "upper management" would not receive the components without that documentation, and that Aeroservice would be forced to return the components if it did not receive the documentation.

On April 27, 2000, Northwest responded that it had, indeed, signed the forms in the appropriate block, that it was willing to correct any typographical errors, and that no other documentation was available. Northwest contended then, and continues to contend, that the FAA 8130-3 form stands alone and is the only documentation required by the contract.

Aeroservice has refused to pay any additional monies on the contract. Northwest has refused to accept the components for return. Northwest commenced this litigation for, *inter alia*, breach of contract. In the present motion, Northwest seeks summary judgment on its claim that Aeroservice breached the contract, Aeroservice's counterclaim that Northwest breached the contract by wrongfully retaining $300,000 paid to Northwest after delivery of the landing gear, and partial summary judgment on the issue of damages.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral

part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Aeroservice's Breach**

Aeroservice admits that Northwest delivered a significant quantity of structural components for which Aeroservice has not paid, but Aeroservice contends that it owes Northwest nothing because Aeroservice rejected the goods according to the terms of the contract. The parties disagree about whether the contract provided Aeroservice with a right to refuse the materials for any reason or only for good cause and whether the alleged certification problems would constitute "good cause," but that issue is irrelevant because any attempt to reject the components was untimely.

The contract provides that Aeroservice has the right to inspect the components, but it must do so within ten days of receipt. The last components were delivered on January 12, 2000. If one starts counting days on the 13th and excludes weekends and the Martin Luther King Day holiday, the tenth day is January 27, 2000. Even assuming that the Jiron note about the

certification "discrepancies" constituted a legally sufficient notice of rejection, it is dated January 28–beyond the contractual time period for rejection.

Aeroservice attempts to argue that the contract requires only that Aeroservice's inspection of the goods take place within ten days of delivery, that there is no contractual time limit on notifying Northwest of a rejection of the goods. Such a construction of the contract would be nonsensical. The contract states that Aeroservice has ten days in which to inspect the goods; under Minnesota law[2] a buyer accepts goods if he fails to explicitly reject them during the reasonable inspection period. *See* Minn. Stat. § 336.2-606(1)(b); *see also* 14 WILLISTON ON CONTRACTS § 40:16 (4th ed. 2000) ("[T]he buyer is under an affirmative duty to make a timely rejection of nonconforming goods or will be deemed to have accepted them."). The reasonable inspection time is here defined by the contract: ten days. Aeroservice did not notify Northwest of any possible lack of conformance of the goods until *at least* eleven days after delivery of the second shipment.[3]

Thus, as a matter of law, Aeroservice accepted the goods–conforming or not–and yet has not fully performed its obligations under the contract. The Court finds that Northwest is entitled to summary judgment on its claim of breach of contract.

**3. Aeroservice's Counterclaim of Breach**

In its counterclaim, Aeroservice alleges that Northwest breached the contract by retaining $300,000 paid by Aeroservice for structural components without Northwest ever actually

---

[2] The contract specifies that the agreement between the parties is controlled by Minnesota law; Minnesota has adopted the U.C.C. with respect to the sale of goods.

[3] The notification was eleven days after delivery if one gives Aeroservice every benefit in calculating the appropriate time limit and if one construes Aeroservice's request for additional documentation as legally sufficient notice of rejection.

delivering conforming structural components. Because the Court finds, as a matter of law, that Aeroservice accepted the structural components delivered by Northwest–conforming or not–Aeroservice's claim for breach is defeated. Northwest is entitled to summary judgment on that claim.

**4. Damages**

Northwest also seeks partial summary judgment on the issue of damages. The parties disagree regarding the quantity of structural components actually delivered by Northwest. Moreover, Aeroservice alleges that Northwest has breached its duty to mitigate damages. The record currently before the Court raises genuine issues of material fact regarding the issue of damages, and the Court declines to grant even partial summary judgment on this issue.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 28) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Plaintiff's motion for summary judgment in favor of Plaintiff on Plaintiff's claim for breach of contract and Defendant's counterclaim for breach of contract is **GRANTED**; and

   b. Plaintiff's motion for partial summary judgment on the issue of damages is **DENIED**.

Dated: June 14, 2001

DONOVAN W. FRANK
Judge of United States District Court